UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CATHERINE F. RATKOS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:23-cv-00459-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Martin O'Malley,* | ) |
| *Commissioner of SSA*,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Catherine F. Ratkos appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1).[2] For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Ratkos applied for DIB in October 2020, alleging disability as of September 24, 2020. (ECF 6 Administrative Record ("AR") at 16, 231-32).[3] Ratkos's claim was denied initially and upon reconsideration. (AR 16, 93, 103). On December 2, 2022, administrative law judge ("ALJ") Kathleen Winters conducted an administrative hearing, at which Ratkos, who was represented by counsel, and a vocational expert ("VE") testified. (AR 55-83). On March 3, 2023, the ALJ

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for Kilolo Kijakazi in this case. *See Melissa R. v. O'Malley,* No. 1:22-cv-02404-TAB-TWP, 2023 WL 8866397, at *1 n.1 (S.D. Ind. Dec. 22, 2023).

[2] The parties have consented to the exercise of jurisdiction by a Magistrate Judge. (ECF 17, 18).

[3] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

rendered an unfavorable decision to Ratkos, concluding that Ratkos was not disabled because she could perform a significant number of jobs in the national economy despite the limitations caused by her impairments. (AR 16-32). The Appeals Council denied Ratkos's request for review (AR 7-12), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Ratkos filed a complaint with this Court on October 30, 2023, seeking relief from the Commissioner's decision. (ECF 1). Ratkos argues in this appeal that the ALJ erred by: (1) failing to properly document the application of the psychiatric review technique and account for Ratkos's mental limitations in the residual functional capacity (RFC); and (2) failing to evaluate and articulate the persuasiveness of prior administrative medical findings. (ECF 9 at 8, 14).

On the date of the ALJ's decision, Ratkos was fifty-one years old (AR 231); had high school and college degrees, with some special education (AR 66, 266); and had past relevant work as a skilled resident care aide (AR 30, 267). When applying for DIB, Ratkos alleged disability based on the following conditions: post traumatic stress disorder (PTSD); fibromyalgia; asthma; osteoarthritis, with two surgeries on both hands; basal joint arthritis and right knee tendon bursitis; hypothyroidism; irritable bowel syndrome; hysterectomy; interstitial cystitis; menopause and hot flashes; neuropathy in legs; seasonal allergies; anxiety; depression; and high cholesterol. (AR 265).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by

substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process,

requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520.[4] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id.*; *see also Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

At step one of the five-step analysis, the ALJ found that while Ratkos had some earnings in 2020 after her alleged onset date of September 24, 2020, such earnings did not rise to the level of substantial gainful activity. (AR 18). At step two, the ALJ found that Ratkos had the following severe impairments: osteoarthritis of the right knee, lower extremity neuropathy, asthma, fibromyalgia, and PTSD. (*Id.*). The ALJ also noted that Ratkos had non-severe impairments of intermittent headaches, obesity, carpal tunnel syndrome release surgery on the left in May 2020

---

[4] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. *See* 20 C.F.R § 404.1520(a)(4), 404.1520(e), 404.1545(a). The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). The "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (footnote omitted); *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1) ("Your [RFC] is the most you can still do despite your limitations." (citation and quotation marks omitted)). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of performing. 20 C.F.R. § 404.1520(e).

and on the right in June 2020, and thumb surgery on the left in July 2020 and on the right in October 2022. (AR 19). At step three, the ALJ concluded that Ratkos did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20).

> The ALJ then assigned Ratko the following RFC:
>
> > [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently handle and finger bilaterally, stoop, kneel, or crouch; can occasionally climb stairs or ramps, or crawl; and can never climb ladders, ropes, or scaffolds, or balance, as that term is used vocationally. The claimant must avoid all exposure to dangerous moving machinery and unprotected heights. Occasional exposure to humidity, fumes, dusts, odors, gases, and poor ventilation. Work with a moderate level of noise. Work with an option to change positions no more frequently than every 30 minutes, while remaining on task. With work that can be learned in six months or less, with simple routine tasks, and routine work-place changes. The claimant is able to remain on tasks, persist, and maintain pace in two-hour increments, but no production rate pace work such as on an assembly line. Occasional interaction with coworkers, no tandem tasks, occasional interaction with supervisors, and the general public.

(AR 26-27). The ALJ determined at step four that given the foregoing RFC, Ratkos could not perform any of her past relevant work. (AR 30). At step five, given Ratkos's age, education, experience, and RFC, the ALJ found that Ratkos could perform a significant number of unskilled, light-exertional jobs in the economy, including routing clerk, mail clerk, collator operator, router, and electronics worker. (AR 30-31). Therefore, Ratkos's application for DIB was denied. (AR 31-32).

## C. The Psychiatric Review Technique and Mental RFC

Ratkos first argues that a remand is required because the ALJ failed to properly apply the psychiatric review technique for evaluating mental limitations and to account for Ratkos's mental limitations in the RFC. (ECF 9 at 8-14). While the ALJ's application of the psychiatric

review technique "is not a model of compliance," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), the deficiency in that regard is harmless error. The mental RFC assigned by the ALJ is supported by substantial evidence.

1. The Psychiatric Review Technique

The psychiatric review technique, also known as the "special technique," is set forth in 20 C.F.R. § 404.1520a. *Id.* at 365. "The special technique requires the ALJ to first determine whether a claimant has a medically determinable mental impairment," which is accomplished by "evaluating the claimant's pertinent symptoms, signs, and laboratory findings." *Id.* (citations and internal quotation marks omitted). If so, "the ALJ must document that finding and rate the degree of function limitation in four broad 'functional areas:' activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* (citing 20 C.F.R. § 404.1520a(c)(3); *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008)). "These functional areas are known as the 'B criteria.'" *Craft*, 539 F.3d at 674.

"The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. The final area is rated on a four-point scale: none, one or two, three, four or more." *Pepper*, 712 F.3d at 365 (citations omitted); *see also Craft*, 539 F.3d at 674-75. "The ratings assigned to each functional area corresponds to a determination of severity of mental impairment." *Pepper*, 712 F.3d at 365 (citing 20 C.F.R. § 404.1520a(d)(1)); *see also Craft*, 539 F.3d at 675. "If the impairment is considered severe, the ALJ must determine whether the impairment meets or is equivalent in severity to a listed mental disorder." *Pepper*, 712 F.3d at 365 (citing 20 C.F.R. § 404.1520a(d)(2)). "If the mental impairment neither meets nor is equivalent in severity to any listing, the ALJ will assess the claimant's RFC." *Id.* (citing 20 C.F.R. § 404.1520a(d)(3)). "The ALJ must document [her] use of the technique, incorporating

the relevant findings and conclusions into the written decision." *Id.* (citing 20 C.F.R. § 404.1520a(e)(4)). "The decision must adequately discuss the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the claimant's mental impairment(s)," as well as "a specific finding as to the degree of limitations in each of the functional areas." *Id.* (brackets and quotation marks omitted) (citing 20 C.F.R. § 404.1520a(e)(4)).

Ratkos argues that the ALJ failed to properly document the ALJ's application of the psychiatric review technique in that the ALJ "failed to articulate that she evaluated each criterion separately and what evidence supported each finding." (ECF 9 at 10). The Commissioner disagrees, asserting that the ALJ indeed applied the special technique and then "translated these paragraph B ratings into a fairly restrictive RFC . . . ." (ECF 16 at 3).

Here, the ALJ did not fully apply the special technique, "at least not to the letter." *Richards v. Astrue*, 370 F. App'x 727, 730 (7th Cir. 2010). To explain, the ALJ found at step two that Ratkos's PTSD was a "severe" impairment, and at step three that it did not meet or equal the criteria of listing 12.15. (AR 18, 21). In doing so, the ALJ did recite that she "considered whether the 'paragraph B' criteria are satisfied." (AR 21). However, rather than assess each of the four paragraph B areas separately and explain what evidence supports each finding, the ALJ launched into a chronological summary of the mental health evidence and then assigned a mental RFC. (AR 21-26). It was not until *after* the ALJ articulated a conclusion about the mental RFC that the ALJ recited:

> For the reasons noted above, in context of the above discussions, in understanding, remembering or applying information, the claimant has a mild limitation. In interacting with others, the claimant has a moderate limitation. With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. As for adapting or managing oneself, the claimant has

>experienced a mild limitation.
>
>Because the claimant's mental impairment does not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied.

(AR 26).

"[T]he RFC analysis is not a substitute for the special technique, even though some of the evidence considered may overlap." *Craft*, 539 F.3d at 675 (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996)); *see also Richards*, 370 F. App'x at 730. "When making findings on the paragraph-B criteria, . . . an ALJ is required to build an accurate and logical bridge from the evidence to [her] conclusion." *Cleotilde D. v. Saul*, No. 18 C 7224, 2021 WL 428823, at *4 (N.D. Ill. Feb. 8, 2021) (citation omitted). The failure to use the special technique to evaluate the severity of a claimant's mental impairments at steps two and three "can result in a flawed analysis of a claimant's mental RFC." *Sexton v. Astrue*, No. 3:11-CV-494 CAN, 2013 WL 1703579, at *5 (N.D. Ind. Apr. 18, 2013) (citing *Craft*, 539 F.3d at 675). Nevertheless, "[u]nder some circumstances, the failure to explicitly use the special technique may . . . be harmless error." *Pepper*, 712 F.3d at 366 (alterations in original) (citing *Craft,* 539 F.3d at 675). Indeed, the Court "will not remand a case for further specification when [it is] convinced that the ALJ will reach the same result." *Id.* at 367 (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)). "That would be a waste of time and resources for both the Commissioner and the claimant." *McKinzey*, 641 F.3d at 892.

The Court concludes that the ALJ's failure to full comply with the special technique here was harmless because ultimately the ALJ fairly reviewed the mental evidence of record and assigned a mental RFC supported by substantial evidence. *Compare Pepper*, 712 F.3d at 366 (finding the ALJ's failure to adhere to the special technique was harmless error), *with Craft*, 539

F.3d at 675) (finding the ALJ's failure to adhere to the special technique was not harmless error where it was compounded by a failure of analysis during the mental RFC determination). The ALJ considered that Ratkos had received conservative mental health treatment, that her improvement was noted in treatment records, and that her daily activities (cited in treatment records and other reports) were not supportive of more than a moderate level of dysfunction. (AR 20, 22, 26). The ALJ observed that Ratkos had not received emergency or inpatient treatment for mental health issues as an adult, that she participated in "talk therapy" at Park Center but no other services there, and was prescribed Cymbalta by her primary care physician, which Ratkos found helpful and without side effects. (AR 20-22). The ALJ then thoroughly summarized the mental health records. (AR 22-26).

Specifically, the ALJ noted that Ratkos's initial intake for mental health treatment in January 2021 noted situational stressors involving the estate of her deceased spouse. (AR 22; *see* AR 618-19). A period of counseling followed. (AR 594-617). The ALJ observed that by May 2021 Ratkos's legal situation had improved, and so did her emotional situation. (AR 22; *see* AR 594). Ratkos reported getting more active in her life, spending time with extended family, dating, and vacationing in Florida. (AR 22; *see, e.g.*, AR 595-96, 598-99). The ALJ further noted that Ratkos's counseling records showed mostly neutral to bright affect, a euthymic mood, and a manageable stress level, with intermittent issues of depression or anxious mood, essentially commensurate with ongoing legal issues. (*Id.*). The ALJ concluded that Ratkos's counseling records did not support greater than a moderate level of functional limitation. (AR 22-23).

The ALJ also considered the results of a neuropsychological examination in May 2021 by Erin Miles, Psy.D., HSPP, that Ratkos underwent for complaints of changes in memory and cognition. (AR 23; *see* AR 622-23). Ratkos's mental status revealed appropriate mood and

9

affect, normal insight and judgment, and intact memory. (AR 623). Dr. Miles's impression was that Ratkos's perceived memory issues stemmed from her mood symptoms. (*Id.*). The ALJ observed that outside of a twelve-month period of situational stressors involving Ratkos's husband's death from COVID in October 2020, other clinical exams noted no acute distress, appropriate mood and affect, and normal thought content, judgment, and behavior. (AR 23 (citations omitted)).

The ALJ further observed that at a psychological consultative exam in April 2021 by Amanda Mayle, Psy.D, HSPP, Ratkos reported a depressed mood, anxious affect, thought content with overvalued ideas, but a normal thought process, adequate memory, and cooperative attitude. (AR 23; *see* AR 573-76). Her immediate memory was marginal, but her remote and recent memory were adequate. (AR 578). She had adequate insight and judgment and sustained good attention. (*Id.*). Stressors included her son's death in 2017, a physical attack in 2000, the death of her husband of eight months from COVID in 2020, and her stepchildren taking her husband's estate from her. (AR 573). She presented with significant mood and behavioral instability that appeared to affect her functioning. (AR 576). Diagnoses included a major depressive disorder, single episode, severe without psychotic features; PTSD; and panic disorder with agoraphobia. (AR 576). The ALJ observed, however, that counseling records near in time to this examination indicated that Ratkos had a neutral to bright affect with an upbeat mood and interaction. (AR 594). The ALJ found Dr. Mayle's opinion "partially persuasive," observing that in contrast, Ratkos's memory was fully intact in the May 2021 neuropsychological exam. (AR 24).

The ALJ also considered the results of a psychological consultative exam by Mary Kadlec, Psy.D., HSPP, in October 2021. (AR 23-24; *see* AR 688-93). Ratkos reported experiencing

moderate depression and severe anxiety since childhood and a history of trauma and flashbacks. (AR 689). A mental status exam revealed a labile affect and depressed mood; slightly impaired concentration, persistence, judgment, and common sense; but no problems with memory or cognitive functioning. (AR 689-90, 693). Ratkos demonstrated social reciprocity during the examination. (AR 691). Dr. Kadlec opined that Ratkos "is intelligent and has good verbal skills and will likely get along with her supervisors and coworkers." (AR 693). Ratkos was diagnosed with major depression, recurrent, moderate; PTSD; generalized anxiety disorder with panic specifier; and uncomplicated bereavement. (*Id.*). The ALJ found this opinion "mostly persuasive," but deferred to Ratkos's treating source's diagnosis of PTSD. (AR 24). Additionally, the ALJ summarized a November 4, 2021, mental health note, documenting a cooperative attitude, well-formed thoughts, flat affect, a depressed mood with anxious distress, and normal memory. (*Id.*; *see* AR 908-11). The provider's diagnostic impression was bipolar I disorder. (AR 913).

    The ALJ also considered Ratkos's daily activities, including Ratkos's ability to live alone, care for pets, cook simple meals, perform household chores, drive a car, go online, pay bills, play games, visit with friends and family, and shop online or with a family member in stores. (AR 24-25). The ALJ noted that Ratkos dislikes being around others due to PTSD, and Ratkos's assertion that she does not handle stress or change well. (AR 25). While Ratkos alleged an inability to work due to "longstanding complaints of severe tiredness/fatigue dating to when attending school," the ALJ observed that such complaints did not preclude Ratkos from sustaining years of skilled work as a skilled residential care aide at substantial gainful activity levels prior to her alleged onset date. (*Id.*).

    The ALJ went on to discuss the opinions of the state agency psychologists, who reviewed

Ratkos's record in May and October 2021. (AR 25; *see* AR 97, 100-01, 107-08, 110-11). In May 2021, Joelle Larsen, Ph.D., opined that Ratkos could "understand, carry out and remember detailed instructions; . . . make judgments commensurate with functions of detailed[] tasks; . . . respond appropriately to brief supervision and interactions with coworkers and work situations; . . . [and] deal with changes in a routine work setting." (AR 101). Similarly, in October 2021, Maura Clark, Ph.D., assessed that Ratkos could "understand, remember, and carry out detailed, but not complex tasks[,] . . . relate on a superficial and ongoing basis with co-workers and supervisors[,] . . . attend to tasks for a sufficient period to complete tasks[,] . . . [and] manage the stresses involved with detailed work-related tasks." (AR 111). The ALJ found these opinions "somewhat persuasive," explaining that while Dr. Larsen and Dr. Clark cited moderate limits in maintaining concentration, persistence, or pace, no accommodating functional limitations were included in their corresponding medical RFC. (AR 25).

In sum, although the ALJ short-changed the psychiatric review technique at steps two and three, the ALJ nonetheless fully discussed the mental health and other evidence of record, citing relevant medical source opinions, treatment notes, medications, and daily activities. "In doing so, it is apparent the ALJ considered all the relevant information and factors required." *Pepper*, 712 F.3d at 366 (citing 20 C.F.R. § 404.1520a(c)(1)). To reiterate, "[t]he ALJ's application of the special technique is not a model for compliance, but [the Court] will not remand a case for further specification when [it is] convinced that the ALJ will reach the same result." *Id.* (citation omitted). Therefore, the Court will not remand the case based solely on the ALJ's failure to fully comply with the special technique at steps two and three.

2. <u>Mental RFC</u>

Ratkos further argues that the ALJ's misstep with the special technique is compounded by

the ALJ's failure to build an accurate and logical bridge from the evidence to the assigned mental RFC, necessitating a remand of the case. (ECF 9 at 11-14). Ratkos hones in on the ALJ's consideration of Dr. Clark's opinion that Ratkos could "relate on a superficial and ongoing basis with co-workers and supervisors." (AR 25, 111; *see also* ECF 9 at 6). When discussing Dr. Clark's opinion, the ALJ reasoned:

> [T]he [ALJ] notes the Agency determination of the words 'superficial', but also 'ongoing', in context for the ability to relate on a 'superficial' as well as on an 'ongoing' basis with supervisors and co-workers. It appears the claimant remains able to have at least occasional interaction with others, as the use of the term 'ongoing' when discussing interactions does not preclude all such contact. The [ALJ] has included limits of occasional interaction with coworkers, no tandem tasks, occasional interaction with supervisors, and the general public, as complete preclusion or more restrictions in interacting are not noted by the State Agency, nor supported by the medical evidence of record.

(AR 25-26).

Ratkos argues that "the ALJ improperly conflated the frequency of social interaction (occasional) with the degree and quality of the social interaction (superficial)." (ECF 9 at 13). Indeed, Social Security Ruling 83-10 defines "occasionally" as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5 (1983). "'[S]uperficial' interactions describe the degree and extent of interaction, because even a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions." *Greene v. Saul*, No. 3:19-cv-00687-JD, 2020 WL 4593331, at *4 (N.D. Ind. Aug, 11, 2020) (citation, internal quotation marks, and brackets omitted). As such, "'superficial' aptly describes the quality of interaction." *Id.* (citations omitted).

Therefore, "'[o]ccasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions." *Wartak v. Bolvin*, No. 2:14-CV-401-PRC, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016) (finding that the ALJ did not

build a logical bridge between the evidence that the claimant could tolerate "superficial contact" on an "ongoing basis" and the assigned RFC for "occasional contact"); *see also Lindsay M. v. O'Malley*, No. 1:22-cv-01981-MPB-MG, 2024 WL 759962, at *6 (S.D. Ind. Jan. 31, 2024) (R. & R.), *adopted by* 2024 WL 758030 (Feb. 22, 2024); *Brenton S. v. Kijakazi*, No. 4:21-cv-00097-JMS-DML, 2022 WL 620604, at *4 (S.D. Ind. Mar. 3, 2022); *Kohne-Gaier v. Saul*, No. 1:19-CV-351-JPK, 2020 WL 5810164, at *6 (N.D. Ind. Sept. 30, 2020); *Andrea K. v. Saul*, No. 19 CV 1682, 2020 WL 4748150, at *9 (N.D. Ill. Aug. 17, 2020); *Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *3-4 (N.D. Ind. Sept. 5, 2018); *Eveland v. Berryhill*, No. 1:17-CV-421-TLS, 2017 WL 3600387, at *4-5 (N.D. Ind. Aug. 22, 2017). "Limitations [of 'occasional contact' and 'superficial contact'] are not interchangeable, nor does one imply the other." *Hurley*, 2018 WL 4214523, at *4.

Given the foregoing case law, Ratkos argues that the "the ALJ erred by failing to reconcile evidence of Ratkos's difficulty interacting with others . . . with her decision to limit Ratkos to occasional interactions *without further restriction*." (ECF 9 at 13 (emphasis added)). Contrary to Ratkos's assertion, the ALJ *did* include a further qualitative restriction in the mental RFC—"no tandem tasks" (AR 27)—to account for Ratkos's difficulty interacting with others. (AR 27); *see Leon A. v. Kijakazi*, No. 20-cv-939, 2022 WL 3226822, at *8 (N.D. Ill. Aug. 10, 2022) (describing "no tandem job tasks requiring cooperation with others" as a "qualitative limitation," rather than "quantitative"). "Courts have found that [a limitation such as 'no tandem tasks'] the ALJ appended to 'occasional' is no less restrictive than a limitation to 'superficial' interactions." *Jennifer L. v. Kijakazi*, No. 22-3018 (JRT/DJF), 2024 WL 165249, at *3 (D. Minn. Jan. 16, 2024) (footnote omitted); *see also Moreno v. Kijakazi*, No. 1:22CV458, 2023 WL 3058330, at *5 n.3 (M.D.N.C. Apr. 24, 2023) (R. & R.) (stating that "[t]he ALJ's bar of teams and tandem work

added a significant, qualitative restriction to the coworker interaction limitation"); *Hayes v. Kijakazi*, No. 1:21CV715, 2023 WL 22159, at *12 (M.D.N.C. Jan. 3, 2023) (R. & R.) (same); *Latisha D.B. v Comm'r of Soc. Sec.*, No. 2:22-cv-3875, 2023 WL 4727000, at *5 (S.D. Ohio July 25, 2023) (R. & R.) (finding that a limitation to tandem tasks "account[s] for the qualitative connotation of the term 'superficial'" (collecting cases)), *adopted by* 2023 WL 5531611 (Aug. 28, 2023); *Hammons v. Comm'r of Soc. Sec.*, No. 21-12933, 2023 WL 2446163, at *5 (E.D. Mich. Jan. 23, 2023) (R. & R.) ("The limitation to no tandem tasks addresses the quality of contact with coworkers and supervisors, requiring no more than superficial contact."), *adopted by* 2023 WL 2263856 (Feb. 28, 2023); *Kelsey v. Comm'r of Soc. Sec.*, No. 1:22-cv-280, 2022 WL 18358921, at *6 (W.D. Mich. Dec. 29, 2022) (R. & R.) (concluding that "occasional" interaction with supervisors and coworkers and no tandem or cooperative tasks "are significant limitations not only on the quantity of time that Plaintiff can interact with supervisors and coworkers (very little up to one third of the workday), but also on the quality of the interaction, essentially amounting to no more than superficial contact with supervisors and coworkers"), *adopted by* 2023 WL 246884 (Jan. 18, 2023); *but cf. Brenton S. v. Kijakazi*, No. 4:21-cv-00097-JMS-DML, 2022 WL 620604, at *5 (S.D. Ind. Mar. 3, 2022) (concluding that "no tandem work" did not speak to the quality of interactions required). Given this persuasive legal authority, the Court concludes that the ALJ's limitation of Ratkos in the mental RFC to "occasional interaction" with coworkers, supervisors, and the public and "no tandem tasks" adequately addresses the opinion of Dr. Clark that Ratkos could "relate on a superficial and ongoing basis with co-workers and supervisors." (AR 111).

In any event, this is not a case where the ALJ applied great weight to Dr. Clark's opinion. To reiterate, the ALJ found the opinions of the state agency psychologists "somewhat

15

persuasive" and explained why she gave these opinions the weight she did. (AR 25). "As such, this is not a matter where the ALJ made no attempt to explain the basis of her decision to limit [Ratkos] to occasional interaction rather than superficial interaction . . . ." *Howard v. Saul*, No. 1:19-cv-00075-PPS-SLC, 2020 WL 806647, at *7 (N.D. Ind. Jan. 29, 2020) (brackets and quotation marks omitted) (second alteration in original) (R. & R.) (rejecting the plaintiff's argument that a remand was necessary where the ALJ limited the claimant to occasional contact with others, rather than superficial contact, and the ALJ explained why she did not give the doctor's opinion great weight), *adopted by* 2020 WL 813080 (Feb. 18, 2020). "[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor— to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citation omitted); *see* 20 C.F.R. § 416.945(e).[5] The mental RFC assigned by the ALJ is supported by substantial evidence and will not be disturbed.

### D. Prior Administrative Medical Findings

Ratkos next argues that the ALJ erred by failing to evaluate and articulate the persuasiveness of prior administrative medical findings. (ECF 9 at 14). Specifically, Ratkos contends that a remand is necessary because "the ALJ failed to properly evaluate the medical findings made by the state agency medical consultants with respect to whether Ratkos's statements about the intensity, persistence, and functionally limiting effects of her symptoms were substantiated by the objective medical evidence alone." (ECF 9 at 15). Again, Ratkos's

---

[5] In fact, in one of the decisions upon which Ratkos relies, *Sanders v. Astrue*, No. 11-1356 (JNE/JJG), 2012 WL 1657922, at *112 (D. Minn. Apr. 17, 2012) (R. & R.); (*see* ECF 9 at 13; *see also* ECF 19 at 5), the portion of the Magistrate Judge's report and recommendation concluding that a remand was necessary due to the ALJ's limitation of the claimant to occasional interaction, rather than superficial interaction, was rejected by the district judge upon review. 2012 WL 1658988, at *2 (May 11, 2012) ("The ALJ's choice in using the word 'occasional' rather than 'brief' and 'superficial' is supported by substantial evidence and adequately balances the evidence in the record. . . . Thus, the Court does not disturb the ALJ's decision on this issue." (internal citation omitted)).

argument is unpersuasive.

"A prior administrative medical finding is a finding, other than the ultimate determination about [disability], about a medical issue made by [the Commissioner's] Federal and State agency medical and psychological consultants at a prior level of review in your current claim based on their review of the evidence in your case record . . . ." 20 C.F.R. § 404.1513(a)(5) (internal citation omitted). Prior administrative medical findings include findings such as: the existence and severity of impairments and symptoms, statements about whether impairments meet or medically equal a listing, the RFC, whether an impairment meets the duration requirement, and how failure to follow prescribed treatment and drug addiction and alcoholism relate to a claim. (*Id.* (internal citations omitted)).

"An ALJ is required to evaluate the persuasiveness of the prior administrative medical findings in the record, but . . . is 'not required to articulate how the ALJ considered each . . . prior administrative medical finding from one medical source individually.'" *Webb v. Kijakazi*, No. 3:22-cv-00197-JTK, 2023 WL 4679341, at *4 (E.D. Ark. July 20, 2023) (brackets omitted) (citing 20 C.F.R. § 404.1520c(b)(1)). "Instead, the ALJ will articulate how the ALJ considered the . . . prior administrative medical findings from that medical source together in a single analysis using several factors . . . ." *Id.* (citation and internal quotation marks omitted). These factors include "the supportability of the opinion, the consistency of the opinion with other evidence in the record, the medical source's relationship with the claimant, any specialization the medical source may have, and any other factors that tend to support or contradict the opinion." *Id.* (citing 20 C.F.R. § 404.1520c(b)(1), (c)(1)-(5)). "The ALJ is only required to explain how supportability and consistency factored into the decision." *Id.* (citing 20 C.F.R. § 404.1520c(b)(2)).

Here, Ratkos points to the reports of B. Whitley, M.D., and J.V. Corcoran, M.D., reviewing state agency physicians, who answered "Yes" to the following question on the Disability Determination Explanation: "Are the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms substantiated by the objective medical evidence alone?" (AR 98, 108; *see* ECF 9 at 15). Ratkos contends that Dr. Whitley's and Dr. Corcoran's answer to this question is a prior administrative medical finding that the ALJ failed to mention or evaluate the persuasiveness of, necessitating a remand of the case. (*Id.* at 15-16). The Commissioner asserts, in response, that the ALJ was not required "to assess the persuasiveness of a checkbox statement regarding the reliability of [Ratkos's] subjective reports because this statement is *not* a medical opinion under the controlling regulations." (ECF 16 at10 (citing 20 C.F.R. § 1513(a)(5))).

District courts that have considered similar arguments to that advanced by Ratkos here have rejected them. *See Hebein v. Kijakazi*, No. 3:21-CV-880-TLS-MGG, 2023 WL 2583267, at *4 (N.D. Ind. Mar. 21, 2023) ("[T]he Plaintiff offers no legal authority that this checkbox answer on the RFC form directs a finding of disability or trumps the ALJ's duty to consider all the categories of evidence in assessing the Plaintiff's subjective symptoms."); *see also Michelle P. v. Kijakazi*, No. 1:21-cv-02529, 2022 WL 17581809, at *7 (S.D. Ind. Sept. 26, 2022) ("The Court is not persuaded . . . that the ALJ is required to address a prior administrative medical finding that the claimant's allegations are substantiated by the objective evidence alone, particularly when the ALJ addressed the more detailed prior administrative medical finding assessing the claimant's RFC."); *Cynthia J. v. Saul*, No. DLB-19-909, 2020 WL 2797465, at *5 (D. Md. May 29, 2020) ("Even though the State agency consultants answered one question in [the claimant's] favor, they ultimately concluded that she was not disabled and could perform light work.");

18

*Tackett v. Colvin*, No. 1:16-cv-181-MTP, 2017 WL 651957, at *6 (S.D. Miss. Feb. 16, 2017) (noting that though the state agency medical consultants answered "Yes" to whether the claimant's allegations were substantiated by the objective evidence alone, the consultants concluded that the claimant could perform light work). Notwithstanding Dr. Whitley's and Dr. Corcoran's answer "Yes" to the question whether the claimant's allegations were substantiated by the objective evidence alone, they both concluded that Ratkos had the RFC to perform a reduced range of light work. (AR 98-99, 108-09). Accordingly, the Court agrees with this persuasive legal authority and concludes that the ALJ did not err in failing to explicitly discuss these doctors' answers to the question in issue.

Therefore, Ratkos's final argument in pursuit of a remand is unavailing, and the ALJ's decision will be affirmed.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Ratkos.

SO ORDERED.

Entered this 4th day of October 2024.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge